Nicola BRANCACCIO, Plaintiff,

v.

Janet RENO, et al., Defendants.

Civil Action No. 96–2707.

United States District Court,
District of Columbia.

April 25, 1997.

Nicola Brancaccio, Ray Brook Federal Correctional Institution, NY, pro se.

Robin Kofsky Gold, U.S. Dept. of Justice, Criminal Division, Washington, DC, for Janet Reno, Gurnia Michaux Griffin, Sylvia Royce, Deborah Williams.

### MEMORANDUM OPINION

SPORKIN, District Judge.

■ This matter is before the Court on Plaintiff's Complaint requesting injunctive relief pursuant to the Alien Tort Claims Act, 28 U.S.C. § 1350 (the "ATCA"),[1] Defendant's Motion to Dismiss pursuant to Federal Rules of Civil Procedure ("FRCP") 12(b)(1) and (6),[2] and Plaintiff's Motion for Judgment of Default pursuant to Rule 55 of the FRCP.[3]

---

1. The Alien Tort Claims Act provides, "[t]he district shall have original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States." 28 U.S.C. § 1350.

2. Fed.R.Civ.P. 12(b)(1) provides for the defense by motion of "lack of jurisdiction over the subject-matter," and Rule 12(b)(6) provides for the defense by motion of "failure to state a claim upon which relief can be granted."

3. Fed.R.Civ.P. 55 states that "when a party against whom a judgment of default for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default."

Plaintiff, a Canadian citizen proceeding *pro se* in this matter, is a federal inmate serving a 135 month sentence at the Federal Correctional Institution ("FCI") Raybrook in Raybrook, New York. Defendants are Janet Reno, the Attorney General of the United States (the "Attorney General"), and the following persons employed with the International Prisoner Transfer Unit (the "IPTU"): Gurnia Michaux Griffin, Sylvia Royce and Deborah Williams.[4] Defendants have denied Plaintiff's request pursuant to the *Convention on the Transfer of Sentenced Persons* (the "Treaty")[5] that he be transferred to Canada to serve the remainder of his sentence. Plaintiff seeks reconsideration of the decision of the IPTU[6] and an order from this Court that he be transferred to Canada. The Court has considered the motions and the opposition thereto.

## BACKGROUND

Plaintiff is currently serving a prison sentence for the violation of federal narcotics laws.[7] On December 20, 1994, Plaintiff filed a request with the Attorney General for the transfer of his sentence to Canada, pursuant to the Treaty. The United States and Canada are both signatories of the Treaty, which provides for the transfer of prisoners as follows:

> A person sentenced in [the territory of] a Party may be transferred to [the territory] of another Party, in accordance with the provisions of this Convention, in order

to serve the sentence imposed on him. To that end, he may express his interest to the sentencing State or to the administering State in being transferred under this Convention. Transfer may be requested by either the Sentencing State or the administering State.

Treaty, Article 2, parts 2–3.

Plaintiff's request for transfer was forwarded to Canada for review and was approved by the Solicitor General of Canada on September 27, 1995. *See* Plaintiff's Complaint Exhibit B. In its notice of approval, the Correctional Service of Canada stated, "[b]ear in mind, however, that the United States has not yet rendered its decision." On December 7, 1995, the United States denied Plaintiff's request for transfer. Plaintiff then wrote to the IPTU and requested information relating to the reasons for the denial of his request. The IPTU informed Plaintiff that his request had been denied primarily because of the seriousness of his offense and the nature of his involvement in the offense.

Plaintiff made several arguments to the IPTU in support of his request for transfer. First, Plaintiff alleged that the denial was arbitrary because similarly situated inmates and inmates with more serious offenses had previously been granted transfers. Second, Plaintiff asserted that the correctional facilities in the United States do not offer ade-

4. The Defendants were sued in both their individual and official capacities. However, all allegations made against the Defendants refer to activities which could only be performed by the Defendants in their official capacities. Additionally, Plaintiff requests injunctive relief which could only be performed by the Defendants in their official capacities. No relief is requested from Defendants in their individual capacities. A complaint must include a statement of the claim showing Plaintiff is entitled to relief and a demand for judgment for the relief plaintiff seeks. *See* Fed.R.Civ.P. 8(a). Because Plaintiff seeks no relief against Defendants in their individual capacities, the action against them in their individual capacities will be dismissed pursuant to Fed.R.Civ.P. 12(b)(6).

5. T.I.A.S. No. 10, 824, 22 I.L.M. 530 (1983).

6. The Attorney General of the United States is authorized to approve or deny prisoner transfers under international prisoner transfer treaties,

pursuant to 18 U.S.C. § 4102(3). The *Convention on the Transfer of Sentenced Persons*, T.I.A.S. No. 10, 824, 22 I.L.M. 530 (1983) is one such treaty which delegates transfer authority to participating nations. With respect to international prisoner transfers, the authority of the Attorney General has been delegated to the Senior Associate Director at the Office of Enforcement Operations, in the Criminal Division of the United States Department of Justice. *See* 28 C.F.R. § 0.64–2. Within that Division is the International Prisoner Transfer Unit [the "IPTU"]. For the purposes of this opinion, the decision is stated as being made by both the Attorney General and the Officers in the IPTU.

7. Specifically, Mr. Brancaccio pled guilty to Conspiracy to Possess With Intent to Distribute Cocaine, 21 U.S.C. §§ 846 and 841(a)(1) on November 9, 1994.

quate medical services to care for his health problems,[8] whereas the Canadian facilities do provide his needed treatment. Third, his mother and wife are unable to travel lengthy distances from Canada to visit him due to illnesses. Fourth, Plaintiff alleged that he satisfied the conditions required for transfer which are set forth in the Treaty. Finally, Plaintiff claimed that public policy compelled his transfer to Canada.

The IPTU denied Plaintiff's request for reconsideration of its decision to deny transfer. The IPTU stated that the denial "was proper and was supported by adequate reasons." *See* Plaintiff's Complaint, Exhibit F. Plaintiff then filed his complaint in this Court on December 5, 1996, asking that this Court find the decision of the IPTU to be invalid and order that he be transferred to Canada.

## ANALYSIS AND DECISION

### I. Plaintiff Has Not Demonstrated a Violation of the Treaty

■ Plaintiff claims that the government has violated the Treaty in denying his transfer request. He alleges that the Defendants failed to consider carefully the factors involved in making the decision to deny his transfer. He also alleges that the Defendants utilized the treaty for an improper purpose, to reward prisoners who provided assistance to the government. Plaintiff contends that this Court has jurisdiction to remedy the Government's allegedly improper action under the ATCA, which provides that "[t]he district courts shall have original jurisdiction of any civil action by an alien for a tort only, committed *in violation of ... a treaty* of the United States." 28 U.S.C. § 1350 (1988) (emphasis added).

Plaintiff's argument must fail because the government has not violated the Treaty. The language of the Treaty regarding the transfer of prisoners is discretionary. The Treaty states that "a person sentenced in [the territory] of a party *may* be transferred to [the territory] of another party." 28 U.S.C. § 1350 (emphasis added). The Attor-

ney General is neither compelled to consider any particular factors, nor restricted from using the transfer authority for any particular purpose. In fact, this Circuit has made clear that the Treaty gives the Attorney General "unfettered discretion with respect to transfer decisions." *Bagguley v. Bush,* 953 F.2d 660, 662 (D.C.Cir.1991) ("A broad grant of discretionary authority is particularly appropriate to prison transfer decisions, depending as they do on a variety of considerations."). Plaintiff has not demonstrated any violation of the Treaty because he "has not shown—indeed cannot show—that the [T]reaty requires international transfer of a prisoner upon request." *Id.; see also, Filartiga v. Pena–Irala,* 630 F.2d 876, 887–88 (2d Cir.1980). Because of the discretion vested in the Attorney General regarding the transfer of prisoners, her proper exercise of such discretion does not constitute a violation of the treaty. Plaintiff's challenge of the Attorney General's discretion is without merit.

### II. This Court Lacks Jurisdiction Over the Discretionary Decisions of the Attorney General Pursuant to the Administrative Procedure Act

■ Plaintiff's claim also fails for a lack of jurisdiction pursuant to the Administrative Procedure Act (the "APA"). The APA provides generally for judicial review of final agency action when a person has suffered legal wrong as a result of an agency action. 5 U.S.C. § 702. Under 5 U.S.C. § 701(a)(2), however, judicial review is not available if "agency action is committed to agency discretion by law."

This Circuit has made clear in *Bagguley* that "decisions [regarding the international transfer of prisoners] constitute agency action committed to agency discretion by law ... [and] are, therefore, not reviewable according to 5 U.S.C. § 701(a)(2)." 953 F.2d at 662; *see also, Scalise v. Thornburgh,* 891 F.2d 640, 648–48 (7th Cir.1989); *Meachum v. Fano,* 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976) ("Transfers between institutions ... are made for a variety of reasons and

---

**8.** Plaintiff's doctor has reported that his "examination for unstable angina" had evidenced a "deteriorating condition." He has also been treated for "mild to moderate clinical depression." *See* Plaintiff's Complaint, Exhibit G.

**4**

often involve no more than informed predictions as to what would best serve institutional security or the safety and welfare of the inmate."). The transfer decision that Plaintiff has challenged in this case is not reviewable by this Court. The Court's lack of jurisdiction on the basis of the APA serves as an alternate grounds for dismissing this action.[9]

### CONCLUSION

Plaintiff has not demonstrated a violation of the Treaty, as would be required for a claim under the ATCA. What is more, agency action with respect to the Treaty is committed to the Attorney General as a matter of law under the APA. Defendants' motion to dismiss will be granted. Plaintiff's motion for judgment of default will be denied. An appropriate order is attached hereto.

### *ORDER*

This matter is before the Court on Defendants' Motion to Dismiss and Plaintiff's Motion for Judgment of Default. The Court has considered the motions and the opposition thereto. For the reasons cited in the accompanying Memorandum Opinion, it is hereby

**ORDERED** that Defendants' motion to dismiss is **GRANTED;** and it is

**FURTHER ORDERED** that Plaintiff's motion for judgment of default is hereby **DENIED.**

---

**9.** Because this Court lacks jurisdiction to hear Plaintiff's claims, it must also dismiss Plaintiff's

Motion for Judgment of Default.